1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  THE UPPER DECK COMPANY; and THE UPPER DECK COMPANY, INC. | CASE NO. 10-CV-1032-JM (BGS) |
| 12                              Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART** |
| 13       vs. | **DEFENDANT'S MOTION FOR TERMINATING SANCTIONS** |
| 14  ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY; and DOES 1 through 10, | |
| 16                              Defendants, | |
| 17 ─────────────────────────── | |
| 18   AND RELATED CLAIMS. | |

19

20          On August 19, 2011, Defendant Endurance American Specialty Insurance Company

21 ("Endurance") filed a motion for terminating sanctions and monetary sanctions, pursuant to

22 Fed.R.Civ.P. 37, for discovery abuses against Plaintiffs The Upper Deck Company and The

23 Upper Deck Company, Inc. (collectively, "Upper Deck") and Counter-defendant Richard

24 McWilliam. (Doc. No. 82.) Upper Deck filed a response in opposition on September 2, 2011.[1]

25 (Doc. No. 102.)  Counter-defendant McWilliam did not file an opposition or join in Upper

26 Deck's opposition.  On September 23, 2011, Endurance filed a reply.  (Doc. No. 119.)

27        _____

        [1]Despite numerous requests from the Court, Upper Deck failed to provide Judge Skomal with a
28 courtesy copy of its opposition, which includes 22 exhibits and totals 70 pages, as required by Judge Skomal's
   Chambers' Rules and Electronic Case Filing Administrative Policies and Procedures Section 2(e).

On September 27, 2011, the Court, pursuant to its discretion under Civ.L.R. 7.1(d)(1), submitted Endurance's motion on the parties' papers and vacated the hearing. (Doc. No. 125.) The Court, for the reasons set forth below, denies in part and grants in part Defendant Endurance's motion for terminating sanctions.

**Relevant Background**

Upper Deck brought this action against Endurance for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief relating to Endurance insurance policies issued to Upper Deck. (Doc. No. 1.)  Upper Deck claims that Endurance failed to fully defend and indemnify Upper Deck against losses incurred in an underlying lawsuit entitled *Konami Digital Entertainment, et al v. Vintage Sport Cards, Inc., et al.*  (*Id.*) Endurance filed a counterclaim against Upper Deck, Upper Deck Authenticated, Ltd., Upper Deck International, LLC, Fleer, LLC, Stellina, LLC, Ascent Group, LLC, Hunt Auctions, LLC and Richard McWilliam.  (Doc. No. 3.)  Endurance claims that before the issuance of the two insurance policies, Upper Deck had already begun engaging in a willful scheme to infringe the copyright protections of Konami by counterfeiting the most rare and valuable Yu-Gi-Oh! trading cards and failed to disclose this scheme to Endurance.  Endurance's counterclaims seek rescission of the insurance policies and a return of the defense payments it made before it discovered Upper Deck's alleged fraud.  (*Id.*)

Currently before the Court is Endurance's motion for terminating sanctions.  In its motion, Endurance requests the Court to issue an order striking Upper Deck's answer to Endurance's counterclaim, holding Upper Deck in default and dismissing its complaint against Endurance with prejudice, barring Upper Deck from denying that it engaged in a willful counterfeiting scheme prior to the inception of Endurance insurance policies, barring Upper Deck from denying that it knew at all relevant times that its conduct was unlawful and fraudulent but failed to disclose this scheme to Endurance, barring Upper Deck from denying that it failed to disclose this scheme to Endurance, barring Upper Deck from denying this information was material to Endurance, and barring Upper Deck from denying that Endurance would not have issued the policies had it known about Upper Deck's willful conduct.  (Doc.

No. 82-1 at 4-5.)  Endurance also requests monetary sanctions in the amount of $22,445.00. (*Id.* at 5.)  Endurance bases its requests for sanctions on what it considers "rampant discovery abuse since the inception of this case."  (*Id.* at 4.)

As the following discovery history will show, the Court has heavily managed discovery between the parties in this action, as the parties have presented the Court with a litany of discovery disputes and have fought with each other every step of the way.  A significant factor in discussing the history of discovery in this case is Plaintiffs' counsel's absence from the practice of law from March 28, 2011 to May 23, 2011 due to a family medical emergency. (Doc. No. 102-1, Anderson Decl. ¶3; *see* Doc. No. 33 at 2.)  In its motion, Endurance focuses on several discovery-related events as evidence of discovery abuse supporting its request for various sanctions.  Many of these events concern disputes that have been separately brought before the Court and ruled upon.  The Court discusses the background of these events and the parties' positions below.

**Rule 26(a)(1) Initial Disclosures**

On June 16, 2010, the Court issued an order that the date of initial disclosure pursuant to Rule 26(a)(1)(A-D) shall occur before July 27, 2010.  (Doc. No. 7 ¶3.)  On July 21, 2010, the parties jointly moved to continue a scheduled Case Management Conference ("CMC") and requested that the parties exchange initial disclosures 14 days after the Case Management Conference.  (Doc. No. 13.)  Following a CMC on September 13, 2010, the Court entered a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings that directed the parties to exchange initial disclosures no later than 30 days after the Case Management Conference, October 13, 2010.  (Doc. No. 16 ¶1.)

Endurance served its initial disclosures on October 13, 2010.  (Doc. No. 82-2, Le Montree Decl. ¶5.)  Upper Deck served its initial disclosures on October 22, 2010.  (*Id.*) Endurance asserts that Upper Deck's initial disclosures were late and therefore violated Rule 26's disclosure requirements.  Upper Deck did not address its service of initial disclosures in its opposition.  During discovery, Endurance never contacted the Court regarding this issue. / / /

1          **Rule 26(a)(2) Expert Report Disclosures**

2          Pursuant to Court order, each expert witness designated by a party was to prepare a

3    written report and provide it to all other parties no later than June 6, 2011.  (Doc. No. 21 ¶1.)

4    Upper Deck served its expert report on June 15, 2011.  (Doc. No. 82-2, Le Montree Decl. ¶7;

5    Doc. No. 82-5, Ex. 3.)  On June 22, 2010, the parties jointly contacted the Court regarding a

6    dispute concerning Plaintiff's expert report.  (Doc. No. 37.)  The Court held a hearing on the

7    matter on June 24, 2011 and issued an order following the hearing.  (Doc. Nos. 38 & 39.)  In

8    the order, the Court noted the parties agreed that "Defendant will inform the Court on July 12,

9    2011 whether it wants to pursue a motion for sanctions against Plaintiffs for the expert report

10   that was produced after the deadline of June 6, 2011."  (Doc. No. 39 ¶3.)  After a status

11   conference on July 12, 2011, Endurance indicated it would not pursue a motion for sanctions

12   to strike the expert report and indicated it wanted Plaintiffs' expert's opinions and testimony

13   strictly limited to the scope of his report.  (*See* Doc. No. 42 ¶4.)    Endurance did not further

14   pursue a motion for sanctions as it was discussed that the relief Endurance sought was more

15   appropriate for a motion in limine or objection at trial if Upper Deck's expert strays from his

16   opinions in the report.  In its current motion, Endurance does not seek to strike the expert

17   report for late disclosure.  Upper Deck does not address its tardy expert report disclosure in its

18   opposition.

19          **Requests for Admission**

20          Endurance served requests for admission ("RFA"s) on Upper Deck on March 25, 2011.

21   (Doc. No. 82-2, Le Montree Decl. ¶8; Doc. No. 82-6 Ex. 4.)   Pursuant to Fed.R.Civ.P.

22   36(a)(3), a party must respond to an RFA within 30 days after being served, unless a shorter

23   or longer time is stipulated to under Rule 29 or ordered by the court.  Upper Deck served its

24   objections and responses to the RFAs on May 27, 2011, more than 30 days after being served.

25   (Doc. No. 82-2, Le Montree Decl. ¶9.) Thereafter, the parties contacted the Court regarding

26   a discovery dispute over whether the RFAs would be deemed admitted due to the late

27   responses by Upper Deck.  (Doc. No. 37.)

28          The Court held a hearing on the matter on June 24, 2011 and issued an order following

the hearing. (Doc. Nos. 38 & 39.)    During the hearing, the Court indicated that it would be inclined to excuse Upper Deck's late responses in light of counsel's personal family medical situation that caused him to be out of the office from March 28 to May 23, 2011.  The order reflecting the hearing states that the parties agreed that, "Plaintiffs will produce amended responses to the Requests for Admission no later than July 1, 2011. If Defendant is not satisfied with the amended responses, the parties are to jointly contact Judge Skomal on July 6, 2011." (Doc. No. 39 ¶1.) After receiving Upper Deck's amended responses, Endurance was not satisfied with the responses and contacted the Court regarding the ongoing dispute.  In light of the dispute, the Court directed Endurance to lodge with the Court the disputed RFAs, the responses thereto, and an explanation of its issues with the amended responses. (Doc. No. 47 ¶3; Doc. No. 59 ¶7.)

Following another discovery hearing on July 28, 2011, the Court directed the parties to meet and confer and submit a joint status report on the status of each disputed RFA reflecting the parties' and the Court's discussion during the hearing. (Doc. No. 61 ¶4.) After receiving only a submission by Endurance that did not reflect the agreed upon changes to the RFAs  discussed at the hearing, the Court issued an order regarding the disputed RFAs and what had been agreed upon at the July 28 hearing. (Doc. No. 65.) In this order, the Court also noted that as all of the RFAs were admitted, denied, or being re-written, all of Upper Deck's objections were either moot or overruled. (*Id.* at 2.) On August 5, 2011, the Court held a further discovery hearing and again discussed issues with the RFAs.  Following the hearing, the Court ordered Upper Deck to produce amended responses, not including RFA Nos. 17 and 18, no later than August 8, 2011. (Doc. No. 69 ¶4.)  The Court also stated that it was reviewing Nos. 17 and 18 due to a dispute over how Endurance re-wrote the requests. (*Id.*) On August 8, 2011, the Court issued an order finding that as re-written Nos. 17 and 18 were completely new RFAs, denying Endurance's request to replace Nos. 17 and 18 with the completely new RFAs, and permitting Endurance to re-write Nos. 17 and 18 as initially permitted by the Court. (Doc. No. 71 at 1-2.)

Endurance complains that the amended responses Upper Deck served on August 8,

2011 were unverified and still incorporated Court-stricken objections.  (Doc. No. 82-2, Le Montree Decl. ¶12; Doc. No. 82-9 Ex. 7.)  Upper Deck submits that it served verified amended responses on August 8, 2011.  (Doc. No. 102 at 6; Doc. No. 102-1, Anderson Decl. ¶12.)  Upper Deck argues it was Endurance who violated a court order by replacing RFA Nos. 17 and 18 instead of re-writing them as instructed by the Court.  (Doc. No. 102 at 6.)

**Requests for Production and Privilege Log**

Endurance served Upper Deck with requests for production on March 18, 2011. (Doc. No. 82-10 Ex. 8.)  Endurance's request set April 19, 2011 as the date for Upper Deck to produce the requested materials. (*Id.* at 2.) Upper Deck produced responses on June 20, 2011.  (Doc. No. 82-2, Le Montree Decl. ¶14.)  On June 22, 2011, the parties jointly contacted the Court regarding discovery disputes  concerning Upper Deck's production. (Doc. No. 37.) At the discovery hearing held on June 24, these disputes were discussed.  (Doc. No. 39.) Following the hearing, the Court issued an order indicating that the parties agreed Upper Deck would produce the correspondence file no later than July 1, 2011, would produce a privilege log for the correspondence file as soon as possible, and would verify that the privilege logs produced with the rest of the production covers all that was produced.  (*Id.* ¶2.)  On July 19, the Court ordered Upper Deck to produce  a privilege log no later than July 25, 2011.  (Doc. No. 47 ¶1.) Upper Deck produced a privilege log by email on July 25, 2011.  (Doc. No. 102-9 Ex. 7.)  Endurance complains that Upper Deck produced the correspondence file without any *Bates* labeling and has failed to confirm that the privilege log for the correspondence file reflects all documents withheld.  (Doc. No. 82-1 at 7.)

On July 25, 2011, the Court held another discovery hearing regarding various disputes, including ongoing issues Endurance had with Upper Deck's production of documents.  At the hearing, the Court ordered Upper Deck to produce communications with the insurance broker no later than July 27 and to produce relevant insurance policies, applications, and communications relating to the *Konami* matter.  (Doc. No. 59 ¶¶5 & 7.)  The Court also ordered Upper Deck to investigate the burden of producing the requested documents from the Nevada litigation file and the parties to brief the issue regarding Endurance's request for

settlement discussions between Upper Deck and Konami.  (*Id.* ¶¶6 & 8.)  On July 28, 2011, the Court held a follow-up discovery hearing and again addressed concerns and issues with document production.  Upper Deck indicated that its insurance broker would not produce the broker file without a subpoena.  The Court ordered Upper Deck to subpoena the complete file from the insurance broker, RJF, no later than July 28, 2011 and to produce it to Endurance without delay once Upper Deck reviewed it for privilege.  (Doc. No. 61 ¶1.)  The Court instructed Upper Deck to produce a privilege log identifying any materials withheld based upon privilege at the same time they produce the RJF file.  (*Id.*)  The Court also ordered Upper Deck to produce the relevant insurance policies, applications, and communications relating to the *Konami* matter no later than August 4, 2011.  (*Id.* ¶3.)  Because Endurance raised more issues with production of documents, the Court held another hearing on August 5, 2011 and ordered Plaintiffs to produce the RJF file and the relevant insurance policies, applications, and communications relating to the *Konami* matter no later than August 8, 2011.  (Doc. No. 69 ¶3.)

Endurance claims that Upper Deck has failed to produce any documents on the relevant insurance policies and received less than the entire RJF file from Upper Deck.  (Doc. No. 82-1 at 8.)  Endurance asserts that despite Upper Deck's counsel's representation that the insurance documents were placed in outgoing mail on August 8[2], Upper Deck has failed to produce them.  (*Id.*; Doc. No. 82-2, Le Montree Decl. ¶25.)  Additionally, Endurance complains that Upper Deck did not serve a copy of the subpoena to RJF on Endurance's counsel, did not supply a certification of RJF's custodian of records, did not indicate whether any documents were withheld for privilege, and produced an additional 324 pages from the RJF file at an August 10 deposition.  (Doc. No. 82-1 at 8; Doc. No. 82-2, Le Montree Decl. ¶¶24 & 26.)  Upper Deck asserts that it has produced the relevant and requested insurance file from RJF, including policies of insurance.  (Doc. No. 102-1, Anderson Decl. ¶13.)  The parties never jointly

---

[2]Endurance asserts that if Upper Deck produced the insurance documents on August 8, the production was already ten days late.  (Doc. No. 82-1 at 8.)  The basis for this assertion is unclear, as the Court specifically ordered Upper Deck to produce the relevant insurance documents no later than August 8, 2011.  (Doc. No. 69 ¶3.)

contacted the Court after meeting and conferring on a discovery dispute concerning an alleged

incomplete RFJ file production nor on an alleged failure to produce insurance documents.[3]

After receiving briefing from the parties and holding two hearings on Endurance's request for settlement discussions, the Court resolved the parties' discovery dispute concerning this request.  The Court found settlement discussions between Upper Deck and Konami from the underlying litigation not privileged and ordered Upper Deck to produce, to the extent they exist, any such documents no later than August 16.  (Doc. No. 76 ¶1.)  The Court found settlement discussions between Upper Deck and its counsel in the underlying litigation privileged, not subject to waiver of the privilege, and therefore not subject to discovery.  (*Id.* ¶2; Doc. No. 93.)

After ordering production of some of the settlement documents, on August 16 Plaintiff's counsel sent a fax to Endurance's counsel indicating that Upper Deck is not in the custody, control or possession, nor is aware of the existence of, documents relating to settlement discussions between Upper Deck and Konami from the underlying litigation.  (Doc. No. 82-21 Ex. 19.)  Endurance asserts that Upper Deck's privilege log reflects at least twelve documents relating to settlement in the underlying action.  (Doc. No. 82-1 at 8; Doc. No. 82-20 Ex. 18.)  The parties never jointly contacted the Court after meeting and conferring regarding a dispute concerning the documents identified on the privilege log and Upper Deck's August 16 assertion that no documents exist relating to settlement discussions between Upper Deck and Konami.

Notwithstanding, on August 30, 2011 the Court held a telephonic discovery hearing during which Endurance complained that Upper Deck had not turned over all the settlement communications between Upper Deck and Konami.  Michael Anderson, counsel for Upper Deck, again told Darren Le Montree, counsel for Endurance, that he had turned over all such

---

[3]Judge Skomal's chambers' rules require parties to promptly meet and confer if a discovery dispute arises.  If the parties are unable to resolve the dispute, they are to then jointly contact Judge Skomal's chambers and speak with the research attorney assigned to the case within thirty (30) days after the date upon which the event giving rise to the dispute occurred.

communications.  A discussion ensued regarding settlement communications listed within the privilege log.  The Court told Mr. Le Montree that it was holding Mr. Anderson at his word that all communications had been turned over, and further, that nothing in the privilege log fit within the Court's order directing Upper Deck to turn over Konami settlement communications.

### Deposition of Counter-defendant Richard McWilliam

Richard McWilliam, according to Endurance's counterclaim, is a member and partner as well as the majority owner of Upper Deck.  (Doc. No. 3 at 15, ¶16.)  Endurance noticed the deposition of McWilliam.  After some initial scheduling changes, Endurance reset McWilliam's deposition for July 12, 2011, a date that counsel for Upper Deck and McWilliam, Michael Anderson, confirmed to be the only date McWilliam and his personal counsel could attend.  (Doc. No. 82-24 Ex. 22.)  On July 8, 2011, Mr. Anderson advised counsel for Endurance that McWilliam did not place the July 12 date on his calendar and therefore would not be attending the deposition.  (Doc. No. 82-25 Ex. 23.)  McWilliam's deposition was then rescheduled for July 28, 2011 and confirmed by Mr. Anderson.  (Doc. No. 82-26 Ex. 24 & Doc. No. 82-27 Ex. 25.)  On the afternoon of July 27, 2011, McWilliam went to Scripps Encinitas Hospital and left the hospital at 9:00 p.m. (Doc. No. 102-14 Ex. 12.)  Mr. Anderson notified counsel for Endurance of McWilliam's medical unavailability by fax and letter on July 27, 2011.  (Doc. No. 102-13 Ex. 11.)  On August 1, 2011, McWilliam consulted his primary care physician, who based upon his present condition and McWilliam's known condition on July 27, opined by affidavit signed August 15, 2011 that McWilliam would have been medically unable to attend his all day deposition on July 28.  (Doc. No. 102-15 Ex. 13.)

On July 29, 2011, Mr. Anderson emailed counsel for Endurance, stating that he had spoken with McWilliam's assistant and was advised that August 9 at 10:00 a.m. or August 11 at 10:00 a.m. were available dates for McWilliam's deposition.  (Doc. No. 82-30 Ex. 28 at 4.)  Counsel for Endurance then apprised Mr. Anderson that the August 11 date worked.  (*Id.* at 3-4.)  On August 4, 2011, Mr. Anderson emailed counsel for Endurance to advise him that McWilliam "is unavailable for deposition on August 11" and informed him that August 23 was

cleared as a secure date. (*Id.* at 3.) This email, and emails regarding the same, did not contain an explanation of why McWilliam was suddenly unavailable for a date cleared by his assistant six days earlier. (*Id.* at 1-3.)

At the request of counsel for Endurance, the Court held a discovery conference on August 5, 2011 regarding McWilliam's deposition, as well as other discovery dispute matters. (Doc. No. 68.)  At the hearing, the Court asked counsel for Upper Deck and McWilliam, Mr. Anderson, why McWilliam was unable to attend the scheduled August 11 deposition.  Mr. Anderson replied that McWilliam was still ill and unable to attend.  When asked what illness prevented McWilliam from attending, Mr. Anderson could not specify and indicated he did not have direct communications with McWilliam.  Because Mr. Anderson could offer no facts supporting McWilliam's unavailability other than vague assertions about an undefined illness, the Court ordered McWilliam to appear for his deposition on August 11, 2011 at 10:00 a.m. in Carlsbad, CA.  (Doc. No. 69 at 1.)  Following the Court's order, neither Upper Deck nor McWilliam presented any additional facts regarding McWilliam's unavailability or moved for a protective order regarding the deposition. On August 10, 2011, counsel for Endurance received a voicemail from Mr. Anderson stating that he had spoken with Upper Deck and was informed that McWilliam is still out of the country and won't be able to appear for the August 11 deposition. (Doc. No. 82-2, Le Montree Decl. ¶39.) On August 11, 2011, defense counsel, John Clifford, took a Statement of Non-appearance of Richard McWilliam at the scheduled deposition. (*Id.* ¶40; Doc. No.  82-32 Ex. 30.)  The statement of non-appearance states, "It is now 10:17 a.m. and Mr. McWilliam has not yet appeared for the deposition." (*Id.* at 5:6-7.)

Upper Deck asserts that McWilliam was out of the country from August 5, 2011 to August 20, 2011 for both work and health reasons.  (Doc. No. 102 at 8.)  Upper Deck has not provided any documentation regarding the alleged health reasons that required McWilliam to travel out of country for two weeks nor what the work purposes entailed.  In response to an order to show cause why sanctions should not be issued against McWilliam for failing to appear at a court-ordered deposition, McWilliam submitted a declaration stating that on August

5, 2011 he was scheduled to fly to Italy for a trip that consisted of both business and rest.[4] (Doc. No. 135, McWilliam Decl. ¶15.)  The declaration does not state that McWilliam traveled for health reasons.  (*See id.*)  The declaration also states that this trip had been planned for several months and that before leaving for his trip to Italy, McWilliam personally informed Mr. Anderson that he was available to be deposed on August 23, 2011 but that he would not be available between August 5, 2011 and August 20, 2011 due to his trip to Italy.  (*Id.*, ¶¶15 & 16.)  A copy of a travel itinerary printed on August 4 and provided with McWilliam's unsigned declaration indicates that he traveled on August 5, 2011 from Carlsbad, CA and arrived in Rome, Italy after two stop-overs on August 6, 2011.  (*Id.*, Ex. 3.)  On August 20, 2011, McWilliam departed Rome and returned to California.  (*Id.*)

### Upper Deck's 30(b)(6) Designee

Endurance also raises concerns regarding Upper Deck's Rule 30(b)(6) designee, George Rikos and his preparation for the 30(b)(6) deposition of Upper Deck.  Endurance separately raised this issue with the Court and the Court ordered the parties to properly  meet and confer on the issue.  (Doc. No. 91.)  Due to a voluntary settlement conference, the Court vacated, at the request of the parties, the briefing schedule on a dispute concerning claims of attorney-client privilege and work product protection at George Rikos's 30(b)(6) deposition and indicated the Court would set a deadline to meet and confer if the case failed to settle. Accordingly, the Court will not consider Endurance's allegations regarding George Rikos in connection with the current motion.

The parties are to properly meet and confer on the issue of the preparedness of Rikos and prepare a list of the topic areas in issue no later than **October 14, 2011**.  If the parties are unable to resolve the issues, the parties are to jointly call the Court to obtain a date by which to file a joint motion listing the topic areas in issue and their supporting arguments for their

---

[4]On September 23, 2011, Michael Bernstein, general counsel for Upper Deck, submitted an unsigned and undated declaration on behalf of McWilliam stating that McWilliam's current health condition prevented him from executing and signing a declaration.  (Doc. No. 122, Bernstein Decl. ¶5.)  After the Court ordered McWilliam to file a signed declaration, on September 29, 2011 McWilliam filed the identical declaration Bernstein earlier submitted on his behalf.  (Doc. No. 135.)

respective positions.

With respect to Upper Deck's assertions of attorney-client privilege and work product protection during the 30(b)(6) deposition, the parties are to meet and confer and agree on the specific topic areas at issue.  Thereafter, the parties are to file a joint motion, not to exceed 5 pages in length, addressing their grounds for and against privilege and/or protection no later than **October 21, 2011**.

### Problems Between Counsel

Counsel for Endurance and counsel for Upper Deck and McWilliam both make allegations regarding the other's unprofessional conduct.  These allegations include lobbing obscenities at each other, refusing to meet and confer on scheduling and discovery issues, and improperly filing joint papers with the Court.  The undersigned has experienced all too much of the unprofessional conduct that has taken place between counsel in this case and will not engender to lay blame more heavily on one party.  Part of the reason the Court has been so heavily involved in discovery in this case is due to counsel's inability to communicate with each other as reasonable professionals.  That being said, the Court will not engage in the mud-flinging in deciding the motion currently before it.  However, all counsel are reminded of their duties under Civ.L.R. 83.4.

### Discussion

Rule 37 of the Federal Rules of Civil Procedure empowers this Court to issue sanctions against a party for failing to make disclosures and for not obeying a discovery order. These sanctions include but are not limited to: (1) establishing designated facts for the purposes of the action; (2) refusing to allow the disobedient party to support or oppose designated claims or from introducing designated matters in evidence; (3) striking pleadings or parts of pleadings until the order is obeyed; (4) staying further proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part or rendering a judgment of default against the disobedient party; and (6) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. *See* Fed.R.Civ.P. 37(b)(2)(A),(i-vii); Fed.R.Civ.P. 37(c)(1). Endurance's motion really boils down to one major

1   event–McWilliam's failure to attend a court-ordered deposition.  As explained below, the

2   Court does not find the other discovery "abuses" Endurance lists worthy of sanctions.

3           **1. Initial Disclosures and Expert Report Disclosures**

4           Under Rule 37, if a party fails to make required disclosures required by Rule 26(a), the

5   party is not allowed to use that information or witness to supply evidence on a motion, at a

6   hearing, or at a trial, unless the failure was substantially justified or harmless.  Fed.R.Civ.P.

7   37(c)(1).  In addition, the court may impose other appropriate sanctions, including those listed

8   in  Rule  37(b)(2)(A)(i)-(vi)  that  are  delineated  above.   Fed.R.Civ.P.  37(c)(1)(C).   Here,

9   Endurance  complains  that  Upper  Deck's  initial  disclosures  were  about  one  week  late.

10  Although Upper Deck does not address this issue in its opposition, the Court finds that this

11  tardiness does not warrant sanctions.  Endurance has not explained how the week-long delay

12  in receiving initial disclosures harmed Endurance.  It appears from the factual background

13  Endurance provides that this delay was harmless, as Endurance received Upper Deck's initial

14  disclosures in October 2010 and did not serve the discovery requests that are subject to many

15  of the disputes between the parties until March 2011, slightly more than a month prior to the

16  close of fact discovery on April 29, 2011.[5]  Furthermore, Endurance never brought this issue

17  to the Court's attention pursuant to Judge Skomal's discovery dispute rules.

18          The Court similarly finds that Upper Deck's late-disclosed expert report does not

19  support issuing sanctions.  The parties previously raised this dispute with the Court.  The Court

20  provided Endurance with the opportunity to bring a motion for sanctions under Rule 37 for the

21  late-produced report.  Endurance indicated it would not, partly based on the Court's indication

22  that it felt the failure to timely disclose was substantially justified under the circumstances.

23

24          [5]The Court originally set the fact discovery cutoff in this case for April 29, 2011.  (Doc. No. 16 ¶3.)

25  On joint motion of the parties, on April 19, 2011 the Court extended this deadline to June 17, 2011 based upon
    Upper Deck's counsel's personal family health matter that precluded the parties from completing depositions.

26  (Doc. No. 31 at 1.)  The Court again extended fact discovery to July 5, 2011 based upon the same family health
    matter that caused Mr. Anderson to be out of the office.  (Doc. No. 36 ¶1.)  In light of outstanding fact witness

27  depositions, the Court again extended fact discovery to July 12, 2011.  (Doc. No. 39 at 2, ¶1.)  Finally, the
    Court extended the deadline to complete fact witness depositions to August 12, 2011, with all other fact

28  discovery to be completed by July 12, 2011.  (Doc. No. 44 ¶1.)

Endurance has not indicated how it was harmed by receiving Upper Deck's expert report nine days past the deadline.

### 2. Requests for Admission

Under Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery, the court may issue any of the sanctions delineated above. Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii). The basis for Endurance's sanctions motion regarding the RFAs is that Upper Deck continued to state objections in its amended responses after the Court overruled or found moot the objections. However, Upper Deck asserts Endurance also violated a court order by replacing RFA Nos. 17 and 18 instead of re-writing them in compliance with the court order. (*See* Doc. No. 65 ¶5.) The Court does not find the conduct of either party worthy of the sanctions Endurance seeks. The Court held many hearings and conferences regarding the RFAs and dealt with the parties' issues.

### 3. Requests for Production and Privilege Log

As discussed in relation to the RFAs, Rule 37(b)(2)(A) permits a court to issue sanctions if a party fails to obey an order to provide or permit discovery. Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii). Endurance asserts that Upper Deck failed to obey this Court's orders directing Upper Deck to produce a privilege log for the correspondence file, the RJF file, the relevant insurance policies, applications and communications relating to the *Konami* matter, and settlement documents between Upper Deck and Konami. According to Upper Deck, it has produced the relevant RJF documents, the insurance policies, and does not have any settlement documents in its possession, custody or control.

The Court does not find the issues relating to document production worthy of sanctions, especially terminating sanctions. Upper Deck claims it has produced all that was ordered to be produced and Endurance claims documents are still being withheld. From the parties' assertions, it is not clear that Upper Deck failed to obey a court order. At most, the issues reflect ongoing discovery disputes between the parties that have not been properly brought to the Court's attention under Judge Skomal's chambers' rules. It appears from the parties' briefing that a proper, and civil, **telephonic or in-person** meet and confer may resolve

many of these issues.  The parties are to meet and confer regarding the issues outlined with respect to document productions and privilege logs and attempt to resolve the issues.  After meeting and conferring, the parties may jointly contact the Court with any remaining disputes concerning correspondence file or RJF file privilege logs, RJF documents, or insurance documents no later than **October 21, 2011**.

### 4. Deposition of Richard McWilliam

Endurance's request for sanctions premised on Richard McWilliam's and Upper Deck's failure to obey a court order regarding McWilliam's deposition also falls under Rule 37(b).  Following a discovery conference on the matter, the Court ordered Richard McWilliam to appear for his deposition on August 11, 2011 at 10:00 a.m. in Carlsbad, CA.  It is undisputed that McWilliam did not appear for his deposition and did not seek a protective order after the Court issued its order.  Therefore, the Court finds that McWilliam and Upper Deck, as McWilliam is Upper Deck's officer, failed to obey an order permitting discovery under Rule 37(b).  Endurance seeks dispositive sanctions based upon this failure.

Dispositive sanctions such as dismissal of the complaint are "authorized only in extreme circumstances and only where the violation is due to willfulness, bad faith, or fault of the party." *In re The Exxon Valdez*, 102 F.3d 429, 432 (9th Cir.1996) (quoting *United States v. Kahaluu Const.*, 857 F.2d 600, 603 (9th Cir.1988)).  "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir.1994)).  Dismissal of an action in its entirety represents the most severe penalty that can be imposed. *Kahaluu Const.*, 857 F.2d 600, 602 at n. 5.

Based upon the record before the Court, the Court finds that McWilliam knowingly, voluntarily, and intentionally failed to appear at his court-ordered deposition.  According to McWilliam's declaration, he knew for months that he would be out of the country between August 5 and August 20, 2011.  However, on July 29, 2011, just days before McWilliam was scheduled to leave on his two week trip for "business and rest" that had been planned for months, Mr. Anderson emailed counsel for Endurance, stating that he had spoken with

McWilliam's assistant and was advised that August 9 at 10:00 a.m. or August 11 at 10:00 a.m. were available dates for McWilliam's deposition.  (Doc. No. 82-30 Ex. 28 at 4.)  The Court has trouble believing that McWilliam's secretary was unaware that McWilliam had a planned two week "business" trip to Italy when advising Mr. Anderson of McWilliam's availability.  On August 5, 2011, during the discovery conference regarding the deposition, Mr. Anderson indicated that McWilliam could not appear for the deposition on August 11 because he was ill.  The Court indicated during the conference that unless McWilliam could document some ailment preventing him from attending the deposition, the Court would order him to appear on August 11.  Mr. Anderson indicated that he did not have details of the illness, as he did not have direct contact with McWilliam.  Mr. Anderson never indicated to the Court that McWilliam would be out of the country in Italy on August 11.  Given that McWilliam had himself provided August 11 as an available date and could not document his illness, the Court ordered the deposition to proceed on August 11.  Following the Court's order, neither Upper Deck nor McWilliam moved for a protective order or sought relief from the Court.  There has also been no showing that McWilliam was too ill to attend his deposition on August 11.  Rather, Upper Deck and McWilliam concede that he voluntarily traveled to Italy from August 5 to August 20, 2011, disregarding the Court's order.  McWilliam's failure to appear at his August 11 deposition was not outside of his control, and therefore demonstrates willfulness, bad faith, or fault.  *Jorgensen*, 320 F.3d at 912.

In determining whether to issue a default or dismissal of a party's action pursuant to Rule 37(b), the Court must consider the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir.2004) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987)). This test is a disjunctive balancing test, so not all five factors must support dismissal. *See Bolden v. Los Angeles County Sheriff*, 2008 WL 1969230, *5 (C.D.Cal. April 30, 2008) (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir.1998))

1   (explaining that dismissal is appropriate when four factors support dismissal or where three

2   factors "strongly" support dismissal).

3       The Court finds that a majority of the factors do not support dismissal of this case.  The

4   public's interest in expeditious resolution of this litigation generally weighs in favor of case-

5   dispositive sanctions, as does the court's need to manage its docket. *Yourish v. Cal. Amplifier*,

6   191 F.3d 983, 990 (9th Cir.1999). The Court has spent considerable time trying to manage this

7   litigation and move it forward due to the litany of discovery disputes between the parties.

8   However, the Court notes that much of the discovery fights in this case were in part

9   precipitated by the unfortunate family medical issue Upper Deck's counsel faced and the

10  Court's and the parties' attempts to make up for lost time with an aggressive extension of fact

11  discovery.  As noted above, counsel for Endurance and counsel for Upper Deck have been less

12  than civil to each other and their inability to properly meet and confer and informally resolve

13  disputes has also contributed to the delay in this case.  The delay caused by the unprofessional

14  conduct of counsel has not been solely at Upper Deck's hands.

15      The risk of prejudice to Endurance at this stage does not heavily weigh in favor of case-

16  dispositive sanctions.  The prejudice factor looks to whether one party's "actions impaired ...

17  [the other party's] ability to go to trial or threatened to interfere with the rightful decision of

18  the case." *Kahalu Const.*, 857 F.2d at 604 (citing *Malone*, 833 F.2d at 131). Delay alone,

19  however, is not sufficient to justify dismissal. *See Mir v. Fosburg*, 706 F.2d 916, 919 & n. 2

20  (9th Cir.1983). Upper Deck offered August 23 as an alternative date for McWilliam's

21  deposition, which was rejected by Endurance.  The Court will allow Endurance to take

22  McWilliam's deposition and therefore Endurance's preparation for such will not be wasted.

23  Furthermore, Endurance's ability to prepare a motion for summary judgment is not impaired

24  by McWilliam's failure to appear for his deposition.  Endurance filed a motion for summary

25  judgment on March 18, 2011, more than a month before the initial period of fact discovery was

26  set to close and prior to any noticing of McWilliam's deposition. (*See* Doc. Nos. 16, 22, & 82-

27  22 Ex. 20.)  Endurance has since been permitted to file amended motions for summary

28  judgment to address its rescission argument. (*See* Doc. No. 111.) Endurance argues that it has

1   been prejudiced by delay in receiving discovery in this case near the cutoff so that it cannot

2   follow up on the discovery it receives.  However, Endurance waited until just over a month

3   prior to the fact discovery cutoff to serve its requests for admission and requests for

4   production, which both require thirty day response times, so that there would have been no

5   time left in fact discovery to serve additional, follow-up discovery after receiving Upper

6   Deck's responses.  The Court notes that Endurance has received over one million pages of

7   discovery from Upper Deck, taken all other requested depositions, and has not moved to

8   extend fact discovery to pursue additional discovery based upon newly acquired information.

9

10      The public policy favoring resolution on the merits also weighs against case-dispositive

11   sanctions.  *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).  Endurance's motion for

12   summary judgment is currently pending before the Court and will be fully briefed by

13   November 7, 2011 and heard by the Court on November 21, 2011.  (Doc. No. 139.)

14      Finally, less drastic alternatives are available and likely to accomplish the necessary

15   result.  The Court finds that issue preclusion or evidentiary sanctions, while a less drastic

16   alternative, are inappropriate at this stage for McWilliam's failure to appear for his deposition.

17   While Endurance complains that Upper Deck violated several court orders and engaged in a

18   pattern of discovery abuse, the Court disagrees with this characterization and finds the only

19   violation worthy of sanctions is McWilliam's failure to appear.  Rule 37(b)(2)(C) provides that

20   instead of the sanctions listed in Rule 37(b)(2)(A), the court must order the disobedient party,

21   the attorney advising the party, or both to pay the reasonable expenses, including attorney's

22   fees, caused by the failure to obey a court order, unless substantially justified or other

23   circumstances make an award of expenses unjust. As this is McWilliam's first failure to obey

24   a court order, the Court finds it appropriate to again order McWilliam to sit for his deposition

25   and pay monetary sanctions for the reasonable expenses, including attorney's fees, caused by

26

27

28

1    his failure to appear on August 11, 2011.[6]  The Court does not find, given the circumstances

2    of his failure to appear, that McWilliam's failure to attend his deposition on August 11 was

3    substantially justified and does not find other circumstances making an award of expenses

4    unjust.  The Court bases its award on a reasonable rate and number of hours worked. *Gracie*

5    *v. Gracie*, 217 F.3d 1060, 1070 (9th Cir.2000).

6        Endurance requests $49.856.75 in monetary sanctions, which represents the attorneys'

7    fees incurred in connection with the motion before the Court and the various discovery

8    disputes Endurance asserts were caused by Plaintiffs.  (Doc. No. 82-2, Le Montree Decl. ¶53.)

9    Endurance seeks compensation for 137 hours of attorney and paralegal work for handling

10   discovery disputes, 40 hours of attorney and paralegal work preparing the motion for

11   sanctions[7], and 47 hours of attorney and paralegal work in preparing for McWilliam's

12   deposition. (*Id.* ¶¶54-56; Doc. No. 120, Le Montree Decl. ¶¶14-15.)  Because the Court grants

13   in part and denies in part Endurance's motion for sanctions, the Court finds it appropriate to

14   apportion expenses accordingly.  The Court denies Endurance's motion to the extent it is based

15   on alleged discovery abuses other than McWilliam's failure to obey a court order for his

16   deposition.  Therefore, the Court does not award Endurance attorneys' fees for handling

17   discovery disputes.  As the Court is ordering McWilliam to sit for his deposition, the Court

18   does not award Endurance attorneys' fees for preparing for McWilliam's deposition, as that

19   preparation will not be wasted.   Additionally, because the Court only grants in part

---

21
22   [6]Although Endurance's requested sanctions would fully dispose of a claim or defense, courts have held that the sanction actually imposed by the court determines whether an order is dispositive or nondispositive for purposes of deciding the standard of review a district court judge utilizes in reviewing the order. *See, e.g., Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4-5 (1st Cir. 1999);
23   *see also Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990).  Accordingly, because the Court denies Endurance's motion for sanctions to the extent it seeks terminating sanctions, the
24   Court need not issue a report and recommendation on Endurance's request for default judgment on its counterclaims and dismissal of Upper Deck's complaint.
25

26   [7]Endurance sought 35 hours for the motion for sanctions in its moving papers and noted in its declaration in response to the Court's request for an accounting of time for the related Order to Show Cause
27   that it estimated an additional 5 hours of work preparing its reply papers. Endurance also estimated 7 hours of work for attending the motion hearing.  (Doc. No. 120, Le Montree Decl. ¶15.)  The Court vacated the
28   hearing and therefore will not include the estimate for traveling to and attending the hearing.

1   Endurance's motion for sanctions, the Court does not award Endurance the entire 40 hours

2   sought for preparing the motion for sanctions.

3         In evaluating the reasonable expenses, the Court awards $3,407 in attorneys' fees and

4   costs.  This represents one-third of the hours, or 13.3 hours, spent in preparing the motion for

5   sanctions and supporting papers at an average rate of $192.50 per hour[8], 2.4 hours at $260 per

6   hour spent attending the August 11, 2011 deposition, and the reporter fees of $222.75 for the

7   August 11, 2011 deposition. This amount takes into account a reduction in the total number

8   of hours claimed by Endurance due to the fact that it did not prevail on every issue in its

9   motion.  The Court finds that the $260 hourly rate for Mr. Le Montree and Mr. Clifford, both

10  partners at their law firm, the $185 hourly rate for Ms. Kelly, an associate at the law firm, and

11  the $95 hourly rate for Ms. Flores, a paralegal, are well within the range of reasonable hourly

12  rates for attorneys and paralegals of comparable skill, experience, and reputation litigating

13  similar cases in the San Diego area.  Therefore, the Court awards sanctions in the total amount

14  of $3,407.

15                          **Conclusion**

16        For the reasons set forth above, the Court denies in part and grants in part Defendant

17  Endurance's motion for terminating sanctions.  The Court denies Endurance's request for

18  evidentiary and dispositive sanctions.  The Court grants in part Endurance's request for

19  monetary sanctions.  The Court awards Endurance fees and costs in the amount of $3,407.00.

20  The sanctions shall be paid by Upper Deck and McWilliam to Endurance by **October 14,**

21  **2011.** Upper Deck and McWilliam must file with the Court a Notice of Payment of Sanctions

22  by **October 21, 2011**.  Counter-defendant McWilliam shall appear for his deposition.  Counsel

23  are to meet and confer on a date and location and file a joint status report indicating the date,

24  time and location that have been agreed upon no later than **October 14, 2011**.  The Court

25  / / /

26

27        [8]For its preparation of the current motion, Endurance claims 10 hours of Mr. Le Montree's time at $260 per hour, 25 hours of Ms. Kelly's time at $185 per hour, and 5 hours of Ms. Flores's time at $95 per hour.  This

28  is a total of $7,700, which for 40 hours averages to a $192.50 hourly rate.

1   warns McWilliam and Upper Deck that any future failure to comply with Court orders will

2   result in sanctions that may result in the dismissal of Upper Deck's complaint and default

3   against Upper Deck on Endurance's counterclaim.  *See* Fed.R.Civ.P. 37.

4           **IT IS SO ORDERED**.

5   DATED: October 5, 2011

6                                           _____

7                                           **BERNARD G. SKOMAL**
                                            United States Magistrate Judge